United States District Court
Southern District of Texas
**ENTERED**
September 13, 2021
Nathan Ochsner, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| PRUCO LIFE INSURANCE COMPANY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION H-17-2795 |
| | § | |
| BLANCA MONICA VILLARREAL, | § | |
| | § | |
| Defendant. | § | |
| | | |
| TRANSAMERICA LIFE INSURANCE COMPANY, | § | |
| | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION H-17-2796 |
| | § | |
| BLANCA MONICA VILLARREAL, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND OPINION ON MOTIONS SEEKING PARTIAL SUMMARY
JUDGMENT AS TO INCONTESTABILITY, SUMMARY JUDGMENT AS TO
RESCISSION, AND PARTIAL SUMMARY JUDGMENT AS TO THE
COUNTERCLAIMS**

This litigation over life insurance proceeds has occupied the insurers, the beneficiary, and the lawyers and investigators on both sides for years. The court has devoted considerable time and effort to working through the parties' numerous disputes on facts, law, discovery, and case management.

The facts present an almost hackneyed theme. An insured dies suddenly, a little over two years after large-dollar life insurance policies issue, leaving a young widow who is not the original beneficiary, but no body. Few cases, however, present similar facts or offer guidance on the law.

The policies issued on June 25 and August 26, 2014.  The insured was reported to have died on December 29, 2016, in Mexico, where he and the beneficiary resided.  The premiums were fully and timely paid.  Since then, the insurers have been investigating, pointing to factors they claim indicate fraud by the insured in obtaining the policies and by his beneficiary in claiming the benefits.[1]

In 2017, the insurers sued, seeking a declaratory judgment that they did not owe the death benefits sought.  The beneficiary, Blanca Monica Villarreal, answered and counterclaimed for breach of contract and violations of the Texas Insurance Code.  Discovery is done, at last.  (Docket Entry No. 182).  The parties have asked the court to decide three sets of motions seeking partial summary judgment or summary judgment.

One set of motions presents a threshold question of incontestability.  Villarreal has moved for partial summary judgment that the policies, which are substantively identical, are incontestable under Texas law, including against a challenge that the insured obtained them through material, intentional misrepresentations in the policy applications.  (Docket Entry No. 192, 17-2795; Docket Entry No. 190, 17-2796).  The insurers have responded.  (Docket Entry No. 202, 17-2795; Docket Entry No. 198, 17-2796).  The insurers also objected to and moved to strike evidence used in support of Villarreal's motion for partial summary judgment as to incontestability.  (Docket Entry No. 200, 17-2795; Docket Entry No. 196, 17-2796).  In response, Villarreal moved for leave to file summary judgment evidence.  (Docket Entry No. 205, 17-2795; Docket Entry No. 199, 17-2796).  The insurers have responded.  (Docket Entry No. 215, 17-2795; Docket Entry No. 208, 17-2796).

---

[1]  The two cases are proceeding on a coordinated basis.  (*See* Docket Entry No. 9, 17-2796).  All citations are to the first case, *Pruco Life Insurance Co. v. Villarreal*, No. 4:17-cv-2795 (S.D. Tex. Sept. 15, 2017), unless otherwise indicated.

A related set of motions asks the court to decide whether there are material, intentional misrepresentations in the insured's applications that, assuming the policies are contestable on this basis, would provide a basis for rescission.   The insurers moved for summary judgment on rescission.   They point to what they assert is undisputed evidence showing that the insured deliberately lied on his policy applications about his financial situation, his relationship to the original policy beneficiary, and his citizenship.   (Docket Entry No. 194, 17-2795; Docket Entry No. 191, 17-2796).   Villarreal has responded, arguing that there are at least factual disputes as to whether the representations in the applications were false, much less materially so.   (Docket Entry No. 201, 17-2795; Docket Entry No. 197, 17-2796).   The insurers replied.   (Docket Entry No. 206, 17-2795; Docket Entry No. 200, 17-2796).   The insurers also objected to and moved to strike evidence Villarreal filed with her response.   (Docket Entry No. 207, 17-2795; Docket Entry No. 201, 17-2796).   Villarreal then moved for leave to file summary judgment evidence.   (Docket Entry No. 212, 17-2795; Docket Entry No. 205, 17-2796).   The insurers have responded.   (Docket Entry No. 215, 17-2795; Docket Entry No. 208, 17-2796).

The third set of motions asks the court to decide whether Villarreal's Texas Insurance Code counterclaims for extracontractual damages can proceed.   The insurers say no, because the record discloses numerous bona fide disputes that led them to conduct an investigation that reasonably led them not to pay the death benefits.   They seek partial summary judgment dismissing the counterclaims.   (Docket Entry No. 189, 17-2795; Docket Entry No. 188, 17-2796).   Villarreal vigorously disputes that the insurers investigated reasonably or in good faith.   Instead, according to Villarreal, the insurers' investigation "was not conceived as an effort to verify Mr. Rosendi's death at all; it was, instead, expressly an effort to find a reason to avoid the claims made by Ms. Villarreal."   (Docket Entry No. 198, 17-2795, at 4; Docket Entry No. 195, 17-2796, at 4).   The

3

insurers replied.  (Docket Entry No. 208, 17-2795; Docket Entry No. 202, 17-2796).  The insurers also objected to and moved to strike evidence filed in support of Villarreal's response to the insurers' motion for partial summary judgment.  (Docket Entry No. 209, 17-2795; Docket Entry No. 203, 17-2796).  In response, Villarreal moved for leave to file summary judgment evidence. (Docket Entry No. 211, 17-2795; Docket Entry No. 204, 17-2796).  The insurers have responded. (Docket Entry No. 215, 17-2795; Docket Entry No. 208, 17-2796).

After wading through the motions and responses, the record, oral argument, and the applicable law, the court concludes that the policies are susceptible to challenge on the basis of material, intentional misrepresentations made in the policy applications.  But the rest of the issues presented—were material, intentional misrepresentations made?  Did the insurers reasonably and in good faith investigate the insured's death?  Is he dead?—are riddled with factual disputes that implicate credibility and that support competing inferences.  The result is a trial.  Given the age of the claim and litigation, it is a trial that should take place at the earliest practicable time.

The reasons for these rulings are set out in more detail below.  Because this case is so familiar to the parties, the background is not described in detail.  The parties have done that thoroughly and well.

## I.     Evidentiary Objections

The court must first address the insurers' objections to the evidence Villarreal presented in her motion for partial summary judgment on incontestability, her response to the insurers' motion for summary judgment on rescission, and her response to the insurers' motion for partial summary judgment on her Chapter 541 counterclaims.  Under Fed. R. Civ. P. 56(c)(2), "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."  FED. R. CIV. P. 56(c)(2).  "Although the substance or content of the

evidence submitted to support or dispute a fact on summary judgment must be admissible . . . , the material may be presented in a form that would not, in itself, be admissible at trial." *Lee v. Offshore Logistical & Transp., L.L.C.*, 859 F.3d 353, 355 (5th Cir. 2017) (alteration in original) (quoting 11 MOORE'S FEDERAL PRACTICE-CIVIL ¶ 56.91 (2017))).   When considering evidence in improper form during summary judgment, there is a "precondition . . . that the party submitting the evidence must show that it will be possible to put the information . . . into an admissible form." *Campos v. Steves & Sons, Inc.*, ___ F.4th ___, 2021 WL 3674036, at *4 (5th Cir. Aug. 19, 2021) (citations and quotation marks omitted); *see also* FED. R. CIV. P. 56(c)(2) advisory committee's note to 2010 amendment ("The objection functions much as an objection at trial, adjusted for the pretrial setting. The burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated.").

First, in all three sets of motions, the insurers move to strike certain exhibits attached to the affidavit of Francisco Guerra IV, Villarreal's counsel since January 2021, in which he authenticates the exhibits.   The insurers argue that Guerra does not have the personal knowledge necessary to properly authenticate certain exhibits.   *See* FED. R. EVID. 901(a).   Villarreal need not authenticate all documents at summary judgment if the documents can be authenticated at trial. *See Maurer v. Indep. Town*, 870 F.3d 380, 384 (5th Cir. 2017) ("At the summary judgment stage, evidence need not be authenticated or otherwise presented in an admissible form.").   There is no reason to believe at this stage, based on the evidence presented, that other means cannot be provided for authentication at trial.   The insurers' motions to strike evidence that Guerra's affidavit authenticates is denied, unless otherwise addressed on separate grounds below.

Second, in all three sets of motions, the insurers move to strike the full deposition transcripts that Villarreal attaches to her briefing, other than the specific lines that she cites to,

because "[s]ummary judgment assertions must be supported by citation to specific parts of the evidence in the record."  (Docket Entry No. 200 at 4 (citing FED. R. CIV. P. 56(c)(1)(A); Local Rule 26.1)).  Villarreal moved for leave to amend the evidence to file only the relevant pages of the deposition testimony.  Because the evidence can be provided in admissible form at trial, the court grants Villarreal's motion for leave to amend her deposition exhibits and will consider the portions Villarreal cited.  This includes Villarreal's request to add certain pages of witness testimony, which she did not previously cite to, to the extent the pages cure the insurers' admissibility objections. (*See* Docket Entry No. 211 at 3; Docket Entry No. 212 at 2).  The insurers' motion to strike is denied on this ground.

Third, in all three sets of motions, the insurers move to strike declarations from witnesses who have not been presented for depositions in the United States, because the court agreed with counsel at hearings and in scheduling orders that all witnesses who would testify in this case would be deposed.  Villarreal concedes that these declarations should not be considered.  (Docket Entry No. 205 at 6–7; Docket Entry No. 211 at 6–7; Docket Entry No. 212 at 5–6).  The court agrees and grants the insurers' motion to strike these declarations.  For Villarreal's incontestability motion and response to the insurers' motion for partial summary judgment as to Villarreal's counterclaims, this includes Isaac Diaz's and Mauricio Israel Lara Gonzalez's declarations, (Exhibits G & H). (*See* Docket Entry Nos. 192-7, 192-8, 198-8, 198-9).  For Villarreal's response to the insurers' motion for summary judgment as to rescission, this includes Carlos Morales Figueroa's declarations and documents, (Exhibits F & G).  (*See* Docket Entry Nos. 201-10, 201-11).

Fourth, in all three sets of motions, the insurers argue that certain evidence should be stricken on the ground that it is irrelevant.  For example, the insurers argue that evidence of Rosendi's death is irrelevant to the extent Villarreal relies on it in her incontestability motion

because the incontestability issue is a legal dispute not dependent on the circumstances of Rosendi's reported death. The court denies the insurers' motions to strike based on relevance at this summary judgment stage. If the evidence Villarreal relies on is not relevant to a particular issue, the court will determine that Villarreal has not met her evidentiary burden for summary judgment on that issue. The insurers may object at trial if any other evidence is irrelevant.

Fifth, in two sets of motions, the insurers move to strike as inadmissible hearsay portions of testimony relating to the day of Rosendi's reported death, which Villarreal relies on in her motion for partial summary judgment as to incontestability and in her response to the insurers' motion for partial summary judgment as to Villarreal's counterclaims. Hearsay is a statement, other than one made by the declarant while testifying at the current trial or hearing, "offer[ed] in evidence to prove the truth of the matter asserted in the statement." FED. R. EVID. 801. It is generally inadmissible. FED. R. EVID. 802.

The insurers argue that the following italicized portion of Villarreal's deposition testimony is inadmissible hearsay: "[The doctor] examined [Rosendi]. He turned him around because he was on one side. The doctor examined him and *he told me that Eduardo was no longer with us*." (*See* Docket Entry No. 192-3 at 33). The insurers also argue that the italicized portion of Dr. Escorza's deposition testimony is inadmissible hearsay: "When I heard the scream, I went upstairs and I asked her what happened. *And she said, 'He's dead.' She told me he was dead.*" (*See* Docket Entry No. 198-5 at 9). Villarreal responds that the testimony is admissible under the present-sense-impression hearsay exception, as "describing or explaining an event or condition, made while or immediately after the declarant perceived it." FED. R. EVID. 803(1). "The justification for this hearsay exception relies on the contemporaneousness of the event under consideration and the statement describing that event. Because the two occur almost

7

simultaneously, there is almost no 'likelihood of [a] deliberate or conscious misrepresentation.'" *Rock v. Huffco Gas & Oil Co., Inc.*, 922 F.2d 272, 280 (5th Cir. 1991) (alteration in original) (quoting FED. R. EVID. 803(1) advisory committee's note).

Villarreal's testimony about a doctor's statement when examining Rosendi's body is admissible as a present-sense-impression hearsay exception.  For the same reason, Dr. Escorza's testimony about Villarreal's statement when finding Rosendi's body is admissible.  The court denies the insurers' motion to strike on these grounds.

Sixth, in two sets of motions, the insurers move to strike Rosendi's Mexican death certificate, which Villarreal relies on in her motion for partial summary judgment as to incontestability and in her response to the insurers' motion for partial summary judgment as to her counterclaims.  The insurers argue that the death certificate is unauthenticated by an Apostille certificate.  *See* FED. R. EVID. 902(3).  Villarreal moves for leave to substitute the un-apostilled copy with an apostilled copy of the death certificate.  The court grants Villarreal's motion for leave and will consider the death certificate to the extent it is relevant.  The court denies the insurers' motions to strike on this ground.

Seventh, in one set of motions, the insurers ask to strike Scott Bayley's expert witness testimony, (Exhibit I), which Villarreal relies on in her response to the insurers' motion for summary judgment as to rescission.  (*See* Docket Entry No. 201-13).  The insurers argue that it is inadmissible because it is not sworn.  Unsworn expert testimony can be made admissible for trial, and it is appropriate for the court to consider it as competent summary judgment evidence.  *See Poincon v. Offshore Marine Contractors, Inc.*, __F.4th__, 2021 WL 3578614, at *7 n.4 (5th Cir. Aug. 13, 2021); *Patel v. Tex. Tech Univ.*, 941 F.3d 743, 747–48 (5th Cir. 2019).  And Villarreal

has already moved for leave to submit a sworn affidavit to cure the defect, which the court grants. (*See* Docket Entry. No. 212 at 3; Docket Entry No. 212-2).

The insurers next argue that the expert testimony fails to meet the threshold reliability and relevance requirements under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and Rule 702.  Rule 702 of the Federal Rules of Evidence states that if "scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue," a witness qualified "as an expert by knowledge, skill, experience, training, or education may testify [thereto] in the form of an opinion or otherwise," if: (1) "the testimony is based upon sufficient facts or data"; (2) "the testimony is the product of reliable principles and methods"; and (3) the witness "has reliably applied the principles and methods to the facts of the case."  FED. R. EVID. 702.  "Rule 703 provides that expert opinions based on otherwise inadmissible hearsay are to be admitted only if the facts or data are 'of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject.'" *Daubert*, 509 U.S. at 595 (quoting FED. R. EVID. 703).

A district court must make a "preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid [the reliability criterion] and of whether that reasoning or methodology can be applied to the facts at issue [the relevance analysis]."  *Skidmore v. Precision Printing & Packaging, Inc.*, 188 F.3d 606, 617 (5th Cir. 1999) (quoting *Daubert*, 509 U.S. at 592–93).  The task is "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."  *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999).  The court "must ensure the expert uses reliable methods to reach his opinions; and those opinions must be relevant to the facts of the

case." *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004). In making its reliability determination, the court does not decide the validity of the expert's conclusions, but instead considers the soundness of the general principles or reasoning on which the expert relies and the propriety of the methodology that applies those principles to the facts of the case. *Daubert*, 509 U.S. at 594–95; *Watkins v. Telsmith, Inc.*, 121 F.3d 984, 989 (5th Cir. 1997).

The insurers argue that Scott Bayley's report is irrelevant because it offers only opinions as to Rosendi's income for 2015 and 2016. The court rejects this argument because Rosendi's financial condition after 2014 would be probative of his financial condition in 2012-2013—the years which Rosendi reported income on his 2014 life insurance applications. FED. R. EVID. 401(a); *see* 1 STEPHEN A. SALTZBURG, MICHAEL M. MARTIN, & DANIEL J. CAPRA, FEDERAL RULES OF EVIDENCE MANUAL § 401.02[1] (12th ed. 2019) ("To be relevant it is enough that the evidence has a *tendency* to make a consequential fact even the least bit more probable or less probable than it would be without the evidence.").

Next, the insurers argue that Scott Bayley "ignore[d]" indicators of fraud in the documents he reviewed to prepare the report. (Docket Entry No. 207 at 8). But whether the documents (including bank and financial statements) that Bayley relied on in his report were fraudulent is hotly disputed. Bayley was retained to review financial documents and provide an opinion "regarding Mr. Eduardo Gonzalez Rosendi's annual income provided in his life insurance applications." (Docket Entry No. 201-13 at 5). He appears to have done just that. His opinions are likely to help the jury understand the financial information. The insurers do not dispute that the financial documents Bayley relied on are "of the type" that other experts rely on in making similar financial assessments. The evidence he used to make his financial assessments goes to the weight of his opinion, not its admissibility. "Vigorous cross-examination, presentation of contrary

evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.  For the purpose of summary judgment, the insurers' motion to strike is denied.  This does not preclude them from disputing the expert testimony and the reliability of Bayley's methodology at trial.

Eighth, in one set of motions, the insurers object to Villarreal's reliance on part of the deposition testimony of Rosendi's purported accountant, Alejandro Cervantes Orozco (Exhibit H), as well as to declarations and documents Cervantes produced (Exhibit E) and Villareal submitted in her response to the insurers' motion for summary judgment as to rescission.  (*See* Docket Entry Nos. 201-6, 201-7, 201-8, 201-9, 201-12).  As to Exhibit E, the insurers argue that the spreadsheets purported to summarize Rosendi's fruit and vegetable business receipts must be excluded because the spreadsheet and the receipts are hearsay.  (*See* Docket Entry No. 201-8 at 30–64; Docket Entry No. 201-9 at 2–25).  Voluminous receipts and spreadsheets summarizing them can be admissible as business records.  *See State Farm Fire & Cas. Co. v. Amazon.com, Inc.*, ___ F. Supp. 3d ___, 2021 WL 930697, at *2–3 (N.D. Miss. Mar. 11, 2021).  To the extent Villarreal relies on the receipts and corresponding spreadsheets to show that the contents are true, they are hearsay. Records of regularly conducted activities or events are admissible hearsay if:

> (A) the record was made at or near the time by—or from information transmitted by—someone with knowledge;
>
> (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
>
> (C) making the record was a regular practice of that activity;
>
> (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and

> (E) the opponent does not show that the source of information or the
> method or circumstances of preparation indicate a lack of
> trustworthiness.

FED. R. EVID. 803(6).  "Hearsay within hearsay is not excluded by the rule against hearsay if each

part of the combined statements conforms with an exception to the rule."  FED. R. EVID. 805.

The court agrees with the insurers that Cervantes's testimony and attached documents do

not satisfy the predicate showing that the spreadsheets or the underlying receipts were kept in the

regular course of business.  Cervantes testified that in 2016, Rosendi brought Cervantes a box of

receipts "not so much to carry out accounting work," "but to organize it."  (Docket Entry No. 207-

3 at 13, 39–41).  Cervantes also testified that he did not work to verify what they were from, how

they were generated and kept, or that they were accurate.  (*Id.* at 48–50).  Cervantes's testimony

does not establish that the receipts were records of regular business activities kept in the regular

course of business, and that the receipts were made near or at the time by someone with personal

knowledge.  *See* SALTZBURG, MARTIN, & CAPRA, *supra*, § 803.02[7][d] (A witness is "qualified"

to establish the foundation requirements of a business record under Rule 803(6) "if he or she has

acquired knowledge of how the records are kept, and can testify that they are kept in the ordinary

course of regularly conducted activity.").  To the extent Cervantes's testimony relies on the

spreadsheets for the truth of the contents—approximately how much Mr. Rosendi earned in 2015

and 2016—the testimony is inadmissible hearsay.  *See Boltex Mfg. Co., L.P. v. Galperti, Inc.*, No.

19-20440, 827 Fed. Appx. 401, 408 n.5 (5th Cir. Sept. 11, 2020) (testimony about customer reports

was inadmissible hearsay because there was "no indication . . . that [plaintiffs] produced these

customer reports, an affidavit attesting to their existence or authenticity, or otherwise show[ed]

that [the] testimony satisfie[d] any of the requirements for business records.").  Although evidence

need not be in admissible form at summary judgment, the party seeking to use the evidence must

show that the evidence can be put into admissible form at trial.   Villarreal has not shown how the spreadsheets or the underlying receipts will be admissible as business records at trial.

The insurers also object to and move to strike the Interactive Four business records that Cervantes used to prepare the company's financial statements and tax returns.   The insurers argue that they are not admissible as business records.   The court agrees with the insurers that the fact that Rosendi provided Cervantes with Interactive Four documents in order for Cervantes to prepare accounting documents does not on its own show that the records were made and kept in the regular course of business as a regularly conducted business activity.   In response, Villarreal points to Cervantes's testimony that "he had personal knowledge of the manner in which [Interactive Four] kept its books through personal visits to one of [Interactive Four's] offices," and that he was familiar with the business and its financial statements.   (Docket Entry. No. 212 at 13 (citing Docket Entry No. 201-12 at 37, 50).   But the testimony that Villarreal points to only shows that Cervantes once visited an Interactive Four office to verify its domicile for a tax refund, and that Cervantes had reviewed Interactive Four bank records, invoices, contracts, lease agreements, and formation documents.   This testimony alone does not satisfy the predicates of the business-record hearsay exception, which requires a qualified witness to establish that the financial documents of record were regular business activities kept in the regular course of business and made near or at the time of the activities or events records, by someone with personal knowledge.   The court grants the insurers' motion to strike Exhibit E, the Interactive Four business documents, that Rosendi provided to Cervantes, along with the spreadsheets that Cervantes prepared based on the receipts, and related testimony.   (Docket Entry Nos. 201-6, 201-7, 201-8, 201-9).   Although the court will not rely on these records at summary judgment, this does not foreclose Villarreal from establishing a basis for a business-records hearsay exception through further testimony at trial.

As to some of the documents in Exhibit H, the insurers argue that financial statements (Docket Entry No. 201-12 at 79–94) and tax returns (Docket Entry No. 201-12 at 96–111) that Cervantes prepared for Interactive Four are untrustworthy because Cervantes did not let his business partners know that he was doing the work.  This does not create sufficient doubt as to the accounting documents.  *See United States v. Smith*, 804 F.3d 724, 729 (5th Cir. 2015) ("[T]he burden of establishing that a piece of evidence lacks trustworthiness is on its opponent." (citation omitted)).  Additionally, Villarreal points out that Cervantes testified that one of his business partners did help him on the Interactive Four accounts and that the partners handled the accounting work, in accordance with Mexican business norms.  (*See* Docket Entry No. 201-12 at 16–17, 19). The insurers' motion to strike on this ground is denied.

Ninth, in one set of motions, the insurers object to Exhibits AA and BB (the Dr. Escorza letters), Exhibit EE (the Rene Morales Cortes lease), Exhibit HH (a video of an embalming), and Exhibit SS (a "logbook" sheet allegedly reflecting the cremation of Rosendi's body) as inadmissible unauthenticated hearsay.  Villarreal relies on these exhibits in her response to the insurers' motion for partial summary judgment as to her counterclaims.  (Docket Entry Nos. 198-26, 198-27, 198-30, 198-33, 198-44).  Except for Exhibit SS, which Villarreal concedes is not authenticated, (*see* Docket Entry No. 211 at 7 n.2), these documents appear capable of being authenticated at trial through witness testimony.  The court rejects the insurers' motion to strike on this ground.  The video of an embalming (Exhibit HH) is not an out-of-court statement and is not hearsay.

By contrast, contents of the letters appearing to show that Dr. Escorza was on vacation the day he was called to Rosendi's home, a lease, and a logbook cannot be used for the truth of the contents without further evidence showing that a hearsay exception applies.  The court denies the

insurers' motion to strike Exhibit HH, but grants the motion to strike Exhibits AA, BB, EE, and SS, (*see* Docket Entry Nos. 198-26, 198-27, 198-30, 198-44), to the extent Villarreal relies on them for the truth of the matter asserted.

Tenth, in one set of motions, the insurers also object to Exhibit II-2H attached to the deposition of Judge Emilia Hernandez Perez, a Civil Registry Judge in Mexico City who handles paperwork for Mexican citizens needing to record births and deaths, and who signs cremation orders.  (Docket Entry No. 198-34 at 3–4).  This exhibit consists of a Civil Registry permit to cremate Rosendi.  (*Id.* at 57).  Villarreal relies on this permit in her response to the insurers' motion for partial summary judgment as to her counterclaims.  The insurers argue that this exhibit is unauthenticated and unreliable hearsay because Judge Hernandez testified that she had nothing to do with the Civil Registry document copy and conceded that it was different from versions provided to other investigators.  (*Id.* at 27, 44–47).  The document appears to be capable of authentication at trial.  Judge Hernandez's testimony provides a sufficient basis to find that the Civil Registry permit could be admitted at trial under the public-record hearsay exception.  Under that exception, "[a] record or statement of a public office" is admissible if it sets out "the office's activities," and "the opponent does not show that the source of information or other circumstances indicate a lack of trustworthiness."  FED. R. EVID. 803(8).  Judge Hernandez testified that the permit certificate reflected Civil Registry activities and that stamps on the certificate indicate that the record was a certified copy of Civil Registry documents.  (Docket Entry No. 198-34 at 15, 28).  Exhibit II-2H, a certified and stamped Civil Registry permit copy, is admissible under the public-record hearsay exception at the summary judgment stage, and the court denies the insurers' motion to strike.

Finally, in one set of motions, the insurers object to Exhibit KK, which Villarreal relies on in her response to the insurers' motion for partial summary judgment as to her counterclaims. (*See* Docket Entry No. 198-36). The court denies the motion to strike for lack of authentication because the document appears capable of being authenticated at trial. (*See* Docket Entry No. 211 at 9). The document is a purported invoice from the J. Garcia Lopez funeral services business; Villarreal explains in her motion for leave to amend summary judgment evidence that the document is not hearsay because Villarreal intends to use the invoice as "proof to refute the [insurers'] claims by Mr. Abraham and Diligence that there were no records found a[t] J. Garcia,"—not for truth of the contents. (*Id.*). Because Villarreal's use of Exhibit KK is not hearsay and it is capable of authentication at trial, the court denies the insures' motion to strike.

In sum, the court:

- grants Villarreal's motions for leave, (Docket Entry Nos. 205, 211, 212), to: amend deposition transcript exhibits; substitute an un-apostilled copy of a death certificate with an apostilled one; submit an amended and sworn copy of Scott Bayley's expert report;

- grants the insurers' motion to strike Isaac Diaz's and Mauricio Israel Lara Gonzalez's declarations (Exhibit G & H), and Carlos Morales Figueroa's documents and declarations (Exhibits F & G). (*See* Docket Entry Nos. 192-7, 192-8, 198-8, 198-9, 201-10, 201-11);

- and grants the insurers' motion to strike the following evidence to the extent Villarreal relies on it for the truth of the contents: financial documents that Rosendi reportedly provided to Cervantes, along with the spreadsheets that Cervantes prepared based on receipts that Rosendi provided to Cervantes (Exhibit E), (*see* Docket Entry Nos. 201-6, 201-7, 201-8, 201-9); and the Dr. Escorza letters, lease documents, and logsheet (Exhibits AA, BB, EE, and SS), (*see* Docket Entry Nos. 198-26, 198-27, 198-30, 198-44).

The court will consider all other summary judgment evidence if it is relevant. These rulings do not preclude the parties from seeking to admit or challenge the evidence at trial, based on the predicates established in that proceeding.

## II.    Incontestability and Rescission

### A.    The Policy Applications

Transamerica issued a $10,000,00 policy on June 25, 2014, and Pruco issued a $16,000,00 policy on August 26, 2014. (Docket Entry Nos. 194-2, 194-4). The policies insured the life of Eduardo Rosendi, who lived in Mexico. (*Id.*) The policies named Rosendi's then-significant other as the beneficiary, but in October 2016 after the policies issued, Rosendi married Blanca Monica Villarreal and designated her as the beneficiary of both policies. (Docket Entry No. 194-2 at 25; Docket Entry No. 194-3 at 38–40; Docket Entry No. 194-4 at 78, 105–108). It is also undisputed that Rosendi's death was reported on December 29, 2016, more than two years after the policies issued. (Docket Entry No. 194 at 12–13). He was reported as dying at home, in Mexico. Villarreal claims that Rosendi's body was almost immediately embalmed, and that he was cremated the following day. (Docket Entry No. 198 at 9–12). There is no picture of Rosendi's body after his reported death.

Both policies contained incontestability provisions. The Transamerica policy provided that "[e]xcept for nonpayment of premiums, this policy will be incontestable after it has been in force during the Insured's lifetime for two years from the date of issue." (Docket Entry No. 194-2 at 15). The Pruco policy similarly provided that "[e]xcept for non-payment of premium, we will not contest this contract after it has been in force during the Insured's lifetime for two years from the issue date." (Docket Entry No. 194-4 at 63).

In the 2014 policy applications, Rosendi made representations about his annual income ($1,800,000) and net worth ($70,150,000), and that he owned and was CEO of a business called Interactive Four.  (Docket Entry No. 194-2 at 25; Docket Entry No. 194-3 at 34; Docket Entry No. 194-4 at 77, 85; Docket Entry No. 194-8 at 10, 13).  He submitted financial statements that purported to be from a licensed professional accountant.  (Docket Entry No. 194-3 at 34; Docket Entry No. 194-4 at 133).  The financial statements showed that Rosendi owned real estate valued at $38,250,000.  (*Id.*).  He represented that he had an apartment, a bank account, and business interests in the United States, and that he had resided in the United States for an extended period.  (Docket Entry No. 194-2 at 34; Docket Entry No. 194-4 at 77).

According to the insurers, these statements, and the documents filed to support them, were false.  The insurers point to evidence that Rosendi worked in low-wage-security related jobs from 1986-2007, and in the fruit and vegetable business, unrelated to Interactive Four, which had no declared earnings for 2013-2015.  (Docket Entry No. 194-15 at 11–12; Docket Entry No. 194-16 at 12–13).  The documents the insurers submitted showed a single bank account, in Mexico, but no property owned by Rosendi in Mexico.  (Docket Entry No. 194-16 at 14–15; Docket Entry No. 194-17 at 2–4).  The financial statements were submitted by an individual representing himself as a "Contador Publico," with a professional license, but according to the insurers, this individual was Rosendi's former brother-in-law and he had no professional financial accounting license.  (Docket Entry No. 194-3 at 34; Docket Entry No. 194-4 at 133; Docket Entry No. 194-16 at 8–9; Docket Entry No. 194-21 at 28–29).  The statements that Rosendi owned an apartment were contradicted by information the insurers submitted that his Florida apartment address was owned by a third-party entity unrelated to Rosendi.  (Docket Entry No. 194-13).  The statements about Rosendi's financial holdings in the United States were contradicted by information from the

insurers that he had one bank account, which was used to pay the premiums.  (Docket Entry No. 194-25 at 7–14).  Many, but not all, of the deposits in that account were from unidentified individuals living outside the United States.  (*Id.* at 17, 77, 89, 126, 134, 167, 174, 180).  The insurers also cite a misrepresentation about the original beneficiary Rosendi designated, arguing that their investigation showed that this beneficiary did not know Rosendi.  (Docket Entry No. 194-18 at 3–9, 23).

Villarreal, unsurprisingly, has a very different account of the statements and of the documents in support.  Briefly, Villarreal presents evidence that Interactive Four generated significant net income and that Rosendi had sources of income aside from Interactive Four, including from a fruit and vegetable business.  (Docket Entry No. 201-12 at 44, 69–70, 79–207; Docket Entry No. 201-13 at ¶¶ 38–43).  Villarreal provided expert testimony about the value and annual income generated by these interests, most of which operated on a cash basis, with minimal expenses, and did not generate any tax returns or tax payments.  (Docket Entry No. 201-13 at ¶¶ 29, 31, 33).

Villarreal also explained that Rosendi was clear in his policy applications that he was a citizen and resident of Mexico, and that he had a bank account in the United States.  This account had sufficient funds to pay the policy premiums for several years.  (Docket Entry No. 194-25).  As to the representation that Rosendi owned an apartment in the United States, Villarreal points to the fact that some of the insurers' correspondence relating to the policy applications was addressed to Rosendi at a Florida apartment address, although it is unclear that he had an ownership interest in that apartment.  (Docket Entry No. 194-2 at 31).

The parties dispute whether the policies can be challenged on the basis of the alleged material, intentional misrepresentations in the policy applications; whether the applications do contain misrepresentations; and if so, whether that is a basis for rescission.

## B.     Incontestability

Villarreal moves for partial summary judgment that the policies are incontestable on the basis that under Texas law, insurance policies cannot be contested after remaining in effect for two years during the insured's life.  Villarreal argues that even if Texas law permits insurers to raise a material and intentional misrepresentation defense after the two years, that challenge would not apply here because the life insurance policies did not contain the language reserving the right to raise the challenge.  Additionally, Villarreal argues that the defense would apply only if Rosendi was residing in Texas "during the term of his life insurance policies."  (Docket Entry No. 192 at 16–17).  The insurers oppose on the basis that an exception to incontestability exists when an insurer can prove material and intentional misrepresentations and that the exception applies to Rosendi's life insurance policies because he was "in" Texas when he contracted for the policies and when the policies were delivered to him.

The issue is statutory interpretation.  *See Leland v. Brandal*, 257 S.W.3d 204, 206 (Tex. 2008) (quoting *Fitzgerald v. Advanced Spine Fixation Sys., Inc.*, 996 S.W.2d 864, 866 (Tex. 1999)).  A court must "use definitions prescribed by the Legislature and any technical or particular meaning the words have acquired."  *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625 (Tex. 2008) (citing TEX. GOV'T CODE § 311.011(b)).  A court "must not interpret the statute 'in a manner that renders any part of the statute meaningless or superfluous.'"  *Crosstex Energy Servs., L.P. v. Pro Plus, Inc.*, 430 S.W.3d 384, 390 (Tex. 2014) (quoting *Columbia Med. Ctr. of Las Colinas, Inc. v. Hogue*, 271 S.W.3d 238, 256 (Tex. 2008); *see also* TEX. GOV'T CODE § 311.021(2) ("In enacting

a statute, it is presumed that . . . the entire statute is intended to be effective."). "[I]f a general provision irreconcilably conflicts with a special provision, 'the special or local provision prevails as an exception to the general provision.'" *Graphic Packaging Corp. v. Hegar*, 538 S.W.3d 89, 98 (Tex. 2017) (quoting TEX. GOV'T CODE § 311.026(b)). If the "statutory language is susceptible to more than one reasonable interpretation," the court "look[s] beyond its language for clues to the Legislature's intended meaning." *In re Smith*, 333 S.W.3d 582, 586 (Tex. 2011); *see also* TEX. GOV'T CODE § 312.005 ("In interpreting a statute, a court shall diligently attempt to ascertain legislative intent and shall consider at all times the old law, the evil, and the remedy.").

The language of the applicable Texas Insurance Code provisions is plain. Section 1101.006 of Title 7 of the Texas Insurance Code requires Texas life insurance policies to contain a clause stating that after a life insurance policy has remained "in force for two years from its date of issue during the lifetime of the insured," it is incontestable, except for nonpayment of premiums. TEX. INS. CODE § 1101.006.

Section 705.104 of Title 5 of the Texas Insurance Code is in a chapter governing "Misrepresentations by Policyholders." TEX. INS. CODE ch. 705. This is divided into three subchapters: Subchapter A, General Provisions (applicable to all insurance policies); Subchapter B, Special Provisions related to Life, Accident, and Health Insurance Policies; and Subchapter C, Special Provisions Related to Life Insurance Policies. Section 705.104, part of Subchapter C, provides a defense for life insurance beyond the two-year incontestability period, based on material and intentional misrepresentations:

> A defense based on a misrepresentation in the application for, or in obtaining, a life insurance policy on the life of a person in or residing in this state is not valid or enforceable in a suit brought on the policy on or after the second anniversary of the date of issuance of the policy if premiums due on the policy during the two years have been paid to and received by the insurer, unless:

> > (1) the insurer has notified the insured of the insurer's intention to rescind the policy because of the misrepresentation; or
> >
> > (2) it is shown at the trial that the misrepresentation was:
> >
> > > (A) material to the risk; and
> > >
> > > (B) intentionally made.

TEX. INS. CODE § 705.104.

Life insurance policies are generally incontestable after two years from their issuance date unless an insurer can prove that the insured made intentional and material misrepresentations when obtaining the life insurance. *Pruco Life Ins. Co. v. Villarreal*, No. CV H-17-2795, 2018 WL 2985896, at *2 (S.D. Tex. Apr. 25, 2018). Recission of the life insurance policy remains a defense if the insurer can make this showing. If the court interpreted § 1101.006 to bar a misrepresentation defense after a life insurance policy has been in effect for two years, then § 705.104—which provides a defense for life insurance policies based on intentional and material misrepresentations only after two years of a policy's date issuance—would be meaningless. That counsels against Villarreal's argument.

Texas law also requires courts to interpret special provisions as exceptions to general provisions when the two irreconcilably conflict. Even if the court found, which it does not, that the general two-year incontestability bar (§ 1101.006) conflicted with an available defense beyond the two-year period (§ 705.104), Texas law requires treating the special provision (§ 705.104) as an exception to the general provision (§ 1101.006), rather than make the special provision meaningless.

Despite the court's previous holding and the language of § 1101.006 and § 705.104, Villarreal asks the court to reconsider in light of the history of the Texas Insurance Code. *See*

22

*Villarreal*, 2018 WL 2985896, at *2 (holding that § 705.104 was an exception to § 1101.006 because it was enacted later in time).  Villarreal argues that because Texas courts treated similar past versions of § 705.104 as superfluous, any recodifications should be treated as surplusage. This argument requires the court to examine past versions of § 1101.006 and § 705.104.

In 1903, the 28th Texas Legislature passed an act outlining a variety of rules governing insurance contracts (not only life insurance).  Misrepresentations in insurance contract applications could not serve as a "defense to any suit brought upon such contract, unless it be shown that the matter or thing misrepresented was material to the risk, or actually contributed to the contingency or event on which the policy became due and payable."  *Scottish Union & Nat'l Ins. Co v. Wade*, 59 Tex. Civ. App. 631, 633 (Austin 1910, writ ref'd) (citing art. 3096aa).  Other provisions stated that an insurance policy payable to a Texas citizen or inhabitant issued by a corporation doing business in Texas would be considered a contract governed by Texas law.  Act of 1903, 28th Leg., R.S., ch. 69, art. 3096dd, 1903 Tex. Gen. Laws 94, 94–95.

The 1903 Act gave life insurance companies the option not to be bound by these statutory limits if the companies instead included an incontestability clause in their policies:

> *The provisions of this Act shall not apply to policies of life insurance in which there is a clause making such policy indisputable after two years or less*, provided premiums are duly paid; provided further, that no defense based upon misrepresentation made in the application for, or in obtaining or securing any contract of insurance upon the life of any person being or residing in this state shall be valid or enforceable in any suit brought upon such contract two years or more after the date of its issuance, where premiums due on such contract for the said term of two years have been paid to and received by the company issuing such contract, without notice to the assured by the company so issuing such contract of its intention to rescind the same on account of misrepresentation so made, unless it shall be shown on the trial that such misrepresentation was material to the risk and intentionally made.

*Id.* art. 3096eee, 1903 Tex. Gen. Laws 94, 95 (emphasis added); *see also Scottish Union*, 59 Tex. Civ. App. at 634 ("Any company which chooses to make a life insurance contract containing such stipulation as to noncontestability is, as to that particular contract, but not otherwise, exempt from the operation of the statute.").  Texas law provided life insurance companies with two options: (1) accept the statutory limits for any contract of insurance; or (2) include an incontestability clause and be exempt from those statutory limits during the contestability period but maintain only a few defenses—for nonpayment of premiums or material and intentional misrepresentations—beyond that period.

In 1909, the Texas legislature took these two options away when it passed what is known today as § 1101.006, requiring life insurance policies issued after December 31, 1909 to contain an incontestability clause.  *See Gorman v. Jefferson Standard Life Ins. Co.*, 275 S.W. 248, 251 (Tex. Civ. App.—Amarillo 1925, no writ.).  A century of debate began in 1911 when the Legislature recodified the Texas Insurance Code and included both the 1903 Act provisions, which gave life insurance companies the option to be bound by statutory limits or provide an incontestability clause and maintain limited defenses beyond the contestability period, and the new 1909 language, which required all insurance contracts issued after 1909 to contain incontestability clauses.  *Am. Nat'l Ins. Co. v. Welsh*, 22 S.W.2d 1063, 1064 (Tex. Comm'n App. 1930, judgm't adopted).  Texas courts had to reconcile the 1909 provision mandating incontestability clauses with the more general 1903 provisions giving life insurance companies the option to include an incontestability clause or be bound by other statutory limits.  Texas courts resolved the inconsistency by holding that the general 1903 Act provisions—including the option to bring an intentional and material misrepresentation defense beyond the contestability period—applied to

insurance policies issued on or before December 31, 1909.  *Id.* at 1064–65; *Gorman*, 275 S.W. at 251.

In 1925, the insurance code was recodified again, with the same structure as the 1911 recodification.  The 1925 statute consisted of: (1) a life insurance chapter requiring all life insurance policies to contain incontestability clauses, with no exception for material and intentional misrepresentations; and (2) a general chapter applying to all insurance contracts that maintained the language of the 1903 law making incontestability provisions an option for life insurance companies and containing the misrepresentation defense.  Act of 1925, 39th Leg., R.S., ch. 3, art. 4732, 1925 Tex. Rev. Stat. 1295, 1300; *id.*, ch. 21, 1925 Tex. Rev. Stat. 1407, 1410– 1411.  Texas courts treated the 1925 recodification like the 1911 recodification, holding that the general provisions applied only to insurance policies issued before December 31, 1909—meaning that the material and intentional misrepresentation defense permitted beyond the two-year contestability period remained unavailable in insurance policies issued after 1909.  *Welsh*, 22 S.W.2d at 1064; *see also Patton v. Am. Home Mut. Life Ins. Co.*, 185 S.W.2d 420, 422 (Tex. 1945) (approving the interpretation in *Welsh*, 22 S.W.2d 1063); *Kansas Life Ins. Co. v. First Bank of Truscott*, 78 S.W.2d 584, 586 (Tex. 1935) (citing *Welsh*, 22 S.W.2d 1063).

When the Texas Insurance Code was recodified again in 1951, it kept the same structure as the 1911 and 1925 recodifications, and Texas courts continued to make an intentional and material misrepresentation defense unavailable beyond two years of a policy's issuance date for insurance contracts issued after 1909.  *See* Andrew C. Whitaker, *Rescission of Life Insurance Policies in Texas—Time to Correct Some Old Errors*, 59 Baylor L. Rev. 139, 148–155 (2007) (tracing in depth the history and treatment of the statutory incontestability clause under Texas law).

25

What matters today is that in 2003, the Texas legislature once more recodified the Texas Insurance Code, effective in 2005, but this time it modified the structure used. The Legislature kept the 1909-inspired two-year incontestability requirement (§ 1101.006) in the chapter applicable to life insurance policies. It also kept some of the general 1903-inspired provisions in Subchapter A of a chapter governing misrepresentations made by policyholders. TEX. INS. CODE §§ 705.001-705.005. This time, however, the Texas legislature made clear that the general provisions in Subchapter A did "not apply to a life insurance policy: (1) that contains a provision making the policy incontestable after two years or less; and (2) on which premiums have been duly paid." TEX. INS. CODE § 705.105. Unlike past recodifications, the Texas legislature provided a new, additional provision in Subchapter C, containing special provisions applying to life insurance policies (including § 705.104)—separate and aside from the general 1903-inspired provisions that had been considered superfluous for so long—making available a material and intentional misrepresentation defense for life insurance policies that insurers could raise beyond the incontestability period.

The structure, placement, and language of § 705.104 no longer resemble the recycled 1903 statutory structure and language. Villarreal is correct to point out that the 2003 Texas Legislature passed the 2003 session laws with the statement that it "is intended as a recodification only," with "no substantive change in law . . . intended." Act of May 22, 2003, 78th Leg., R.S., ch. 1274, § 27, 2003 Tex. Gen. Laws 3611, 4139. The Texas Supreme Court, however, has made clear that when "specific provisions of a 'nonsubstantive' codification and the code as a whole are direct, unambiguous, and cannot be reconciled with prior law, the codification rather than the prior, repealed statute must be given effect." *Fleming Floods of Tex., Inc. v. Rylander*, 6 S.W.3d 278, 286 (Tex. 1999) (citation omitted).

The 2003 recodification of the Texas Insurance Code is unambiguous and cannot be reconciled with past treatment of provisions similar to § 705.104.   Courts since 2005 have recognized that the Texas Insurance Code defense for material and intentional policy application misrepresentations is an available defense beyond a contestability period.   *Federated Life Ins. Co. v. Jafreh*, 392 Fed. Appx. 280, 283 (5th Cir. 2010); *Guzman v. Allstate Assurance Co.*, No. 2:19-CV-187-BR, 2020 WL 7868100, at *4–5 (N.D. Tex. Dec. 3, 2020); *Landeros v. Transamerica Life Ins. Co.*, No. 7:17-CV-00475, 2020 WL 3107795, at *5–7 (S.D. Tex. May 8, 2020) (Crane, J.); *Colonial Penn Life Ins. Co. v. Parker*, 362 F. Supp. 3d 380, 402–03 (S.D. Tex. 2019) (Hanen, J.); *Mass. Mut. Ins. Co. v. Mitchell*, 859 F. Supp. 2d 865, 870 (S.D. Tex. 2012) (Ellison, J.).   This court agrees.[2]

Villarreal argues that even if the § 705.104 defense is available, the insurers may not assert it because it is not contained within the four corners of the insurance contract.   Villarreal points to no authority that defenses made available under the Texas Insurance Code must be repeated in the policy.[3]   The Texas Supreme Court has held that "a party is not bound by a contract procured by fraud" and "it is well established that the legal duty not to fraudulently procure a contract is separate and independent from the duties established by the contract itself."   *Formosa Plastics*

---

[2]  Villarreal argues that the Fifth Circuit's opinion in *Cardenas v. United of Omaha Life Ins. Co.*, 731 F.3d 496, 500 (5th Cir. 2013) forecloses this holding, but *Cardenas* has no bearing on interpreting § 705.104. There, the Fifth Circuit interpreted whether a misrepresentation defense was available under 28 Tex. Admin. Code § 3.104(a) (1982) for insurance policy reinstatements.  The Fifth Circuit did not interpret the defense available under § 705.104.

[3]  Villarreal relies on *Southern Union Life Insurance Co. v. White*, 188 S.W. 266, 267 (Tex. Civ. App.—Austin 1916, writ ref'd), *Truscott*, 78 S.W.2d at 585, and *American National Insurance Co. v. Conestoga Settlement Trust*, 442 S.W.3d 589, 596–97 (Tex. App.—San Antonio 2014, pet. denied).   *White* and *Truscott* are inapplicable because those cases concerned life insurance policies issued after 1909 when Texas law did not make available a statutory defense for material and intentional misrepresentations for life insurance contracts beyond the contestability period.   *Conestoga* likewise does not stand for the proposition that a state statute cannot make available a fraud defense if it is not contained within the contract.  In fact, the court there assessed if statutory fraudulent defenses were available in addition to what was contained within the four corners of the life insurance contract when determining whether a conflict of laws existed. 442 S.W.3d at 596–97.

*Corp. USA v. Presidio Engs. & Contractors, Inc.*, 960 S.W.2d 41, 46 (Tex. 1998) (citation omitted).

Last, Villarreal argues that § 705.104 cannot apply here because it applies only to a "life insurance policy on the life of a person in or residing in this state." TEX. INS. CODE § 705.104. Villarreal argues that no reasonable juror could conclude that Rosendi was "in" Texas during the policy terms. The insurers respond with evidence showing that Rosendi was in Texas "on a number of occasions, including when fulfilling the conditions required to place the policies in force." (Docket Entry 202 at 11–12, 23). The statute does not specify where or how long a person must be "in" Texas to allow the defense to apply. "In" is an indication of "inclusion, location, or position within limits." *See In*, Merriam Webster, https://www.merriam-webster.com/dictionary/in (last accessed September 2, 2021). It generally does not refer to time or duration. Section 705.104 is in Subchapter C, which states elsewhere that "[t]his subchapter applies to any insurance policy issued or contracted for in this State." TEX. INS. CODE § 705.102. Reading the statute as a whole, the court interprets § 705.104 to apply to any person who contracted for or was issued an insurance policy in Texas and was "in" or "residing in" Texas for or at some time during the policy period. The Texas Legislature did not specify a narrower meaning.

Villarreal argues that there is no evidence in the record that shows that Rosendi was a person "in" Texas. In response, the insurers point to evidence that Rosendi signed his policy applications in Texas, (*see* Docket Entry No. 202-1 at 79–80; Docket Entry No. 202-4 at 13–14, 16; Docket Entry No. 202-5 at 26, 29, 33; Docket Entry No. 202-8 at 7–8; Docket Entry No. 202-9 at 16–17, 18–19, 42, 56; Docket Entry No. 202-10 at 12), and that after the insurers approved Rosendi's applications, the policies were mailed and delivered to him in Texas, (*see* Docket Entry No. 202-3 at 45; Docket Entry No. 202-4 at 11, 18–20, 32–33; Docket Entry No. 202-5 at ¶ 7).

How long Rosendi was "in" Texas during the life insurance policies is disputed and should be resolved at trial.  Villarreal's motion for partial summary judgment on the incontestability issue, (Docket Entry No. 192), is denied.

### C.   Rescission

The insurers move for summary judgment that the undisputed facts show material, intentional misrepresentations Rosendi made in applying for the policies, warranting rescission as a matter of law.  Villarreal opposes on the basis that there are genuine factual disputes material to determining whether the representations made were intentionally false or material.

"Summary judgment is appropriate only when 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Shepherd ex rel. Est. of Shepherd v. City of Shreveport*, 920 F.3d 278, 282–83 (5th Cir. 2019) (quoting FED. R. CIV. P. 56(a)).  "A material fact is one that might affect the outcome of the suit under governing law," and "a fact issue is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Renwick v. PNK Lake Charles, LLC*, 901 F.3d 605, 610 (5th Cir. 2018) (citations and quotation marks omitted).  The moving party "always bears the initial responsibility of informing the district court of the basis for its motion," and identifying the record evidence "which it believes demonstrate[s] the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

"When the moving party has met its Rule 56(c) burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings."  *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010).  The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim.  *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014).  "A party cannot defeat summary judgment with

conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Lamb v. Ashford Place Apartments LLC*, 914 F.3d 940, 946 (5th Cir. 2019) (citation and quotation marks omitted).  In deciding a summary judgment motion, "the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his or her favor." *Waste Mgmt. of La., LLC v. River Birch, Inc.*, 920 F.3d 958, 972 (5th Cir. 2019) (alterations omitted) (quoting *Tolan v. Cotton*, 572 U.S. 650, 656 (2014)).

Under § 705.104, insurers may present a defense based on material and intentional misrepresentations made in the application for, or in obtaining, a life insurance policy on the life of a person in or residing in Texas.  If the insurers prove: "(1) the making of the representation; (2) the falsity of the representation; (3) reliance thereon by the insurer; (4) the intent to deceive on the part of the insured in making same; and (5) the materiality of the representation," *Mayes v. Mass. Mut. Life Ins. Co.*, 608 S.W.2d 612, 616 (Tex. 1980), the insurer may avoid the policy, and it may be rescinded, *id.*

The record evidence shows the representations Rosendi made in writing when he applied for the policies.  He filled out a number of forms.  The statements he made in those forms, and the documents he submitted, are undisputed.  But there are genuine, factual disputes material to whether those statements and documents were true or not true, if they were material to the insurers' decision to issue the policies, and if untrue and material, whether Rosendi's deception was intentional.[4]  The most significant disputes are as to Rosendi's financial condition.  *See Vasquez v. ReliaStar Life Ins. Co.*, No. 14–12–01115–CV, 2014 WL 1267171, at *2 (Tex. App.—Houston [14th Dist.] Mar. 27, 2014, no pet.) (an insured's false statements in her life insurance application

---

[4] The insurers are correct to point out, that under Texas law, a party must show that the insurer had knowledge of a misrepresentation to prove that the insurer could not have relied on the misrepresentation. *Koral Indus. v. Sec.–Conn. Life Ins. Co.*, 802 S.W.2d 650, 651 (Tex. 1990).  "Failure to use due diligence to suspect or discover someone's fraud will not act to bar the defense of fraud to the contract." *Id.*

"regarding her worth, income, bankruptcy history, and purpose of [a] Trust" were material to the risks assumed); *see also Garcia v. Am. United Life Ins. Co.*, No. 10–40388, 422 Fed. Appx. 306, 313 (5th Cir. Apr. 13, 2011) (an insured's false social security number on a life insurance enrollment form was a material misrepresentation because it hindered the insurance company from "accurately verify[ing] [the insured's] identity to assess the possible financial risks posed by insuring him"). These disputes include whether Rosendi reported the source and amount of his income, holdings, and wealth accurately or not, and how significant these statements were to the insurers' decision to issue the policies. Other disputes, including as to his family connections, his beneficiary, his connection to the United States, the purpose of his U.S. bank account and whether it was "fake," and his residence, add to the need for a jury resolution and weigh against summary disposition.

The motion for summary judgment as to rescission, (Docket Entry No. 194), is denied.

## III.    The Chapter 541 Counterclaims

The insurers seek partial summary judgment dismissing Villarreal's counterclaims for extracontractual damages. The insurers emphasize the indicia of fraud, both in the applications Rosendi submitted and in the reports of his death from Villarreal, and argue that at a minimum, there is a bona fide dispute that precludes recovery under Chapter 541 of the Texas Insurance Code.[5] Villarreal argues that the insurers' investigation was unreasonable and in bad faith, intended from the outset to avoid paying the death benefits.

Under the Texas Insurance Code, it is "an unfair method of competition or an unfair or deceptive act or practice in the business of insurance to" make, issue, circulate—or cause the same—a "statement misrepresenting with respect to a policy issued or to be issued: (A) the terms

---

[5] The insurers intend to address Villarreal's remaining breach of contract claim, which would be a violation under Chapter 542 of the Insurance Code, at trial. (Docket Entry No. 189 n.1).

31

of the policy; (B) the benefits or advantages promised by the policy; or (C) the dividends or share of surplus to be received on the policy." TEX. INS. CODE § 541.051(1).  It is also an unfair practice for an insurance company to make a misrepresentation in an insurance policy: "(1) making an untrue statement of material fact; (2) failing to state a material fact necessary to make other statements made not misleading, considering the circumstances under which the statements were made; (3) making a statement in a manner that would mislead a reasonably prudent person to a false conclusion of a material fact; (4) making a material misstatement of law; or (5) failing to disclose a matter required by law to be disclosed, including failing to make a disclosure in accordance with another provision of this code." TEX. INS. CODE § 541.061.

"Section 541.060 of the Insurance Code identifies nine categories of unfair settlement practices." *Aleman v. Zenith Ins. Co.*, 343 S.W.3d 817, 822 (Tex. App.—El Paso 2011, no pet.) (citing TEX. INS. CODE § 541.060).  Among those categories are: "(1) misrepresenting to a claimant a material fact or policy provision relating to coverage at issue";  "(2) failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of: (A) a claim with respect to which the insurer's liability has become reasonably clear"; "(3) failing to promptly provide to a policyholder a reasonable explanation of the basis in the policy, in relation to the facts or applicable law, for the insurer's denial of a claim or offer of a compromise settlement of a claim"; "(4) failing within a reasonable time to: (A) affirm or deny coverage of a claim to a policyholder"; and "(7) refusing to pay a claim without conducting a reasonable investigation with respect to the claim." TEX. INS. CODE § 541.060(a).  (*See* Docket Entry No. 8 at 15–16).

"Evidence that shows only a bona fide coverage dispute does not, standing alone, demonstrate bad faith.  Nor is bad faith established if the evidence shows the insurer was merely incorrect about the factual basis for its denial of the claim, or about the proper construction of the

policy." *Southland Lloyds Ins. Co. v. Cantu*, 399 S.W.3d 558, 569 (Tex. App.—San Antonio 2011, pet. denied) (citations and quotation marks omitted).  "However, whether an insurer acted in bad faith is a fact issue for the jury and focuses not on whether the claim was valid but on the reasonableness of the insurer's conduct in handling the claim." *Allstate Vehicle & Prop. Ins. Co. v. Reininger*, No. 04-19-00443-CV, 2021 WL 2445622, at *5 (Tex. App.—San Antonio, June 16, 2021, pet. filed) (citations and quotation marks omitted).  And "even if a bona fide coverage dispute exists, that dispute does not excuse an insurer's failure to conduct a reasonable investigation of a claim." *Id.* (citing *Certain Underwriters at Lloyd's, London v. Prime Nat. Res., Inc.*, No. 01-17-00881-CV, 2019 WL 7044667, at *17 (Tex. App.—Houston [1st Dist.], Nov. 26, 2019, no pet.).

"Section 541.151 of the [I]nsurance [C]ode allows a person 'who sustains actual damages' from a defendant's unfair or deceptive insurance practice to bring an action 'for those damages.'" *Old Am. Ins. Co. v. Lincoln Factoring*, 571 S.W.3d 271, 277 (Tex. App.—Fort Worth 2018, no pet.) (quoting TEX. INS. CODE § 541.151).  "A plaintiff who prevails in an action under section 541.151 may obtain 'the amount of actual damages, plus court costs and reasonable and necessary attorney's fees.'  Also, such a plaintiff may obtain treble damages—'an amount not to exceed three times the amount of actual damages'—if the defendant committed the unfair or deceptive act knowingly." *Id.* (citing TEX. INS. CODE § 541.152).

"The general rule is that an insured cannot recover policy benefits for an insurer's statutory violation if the insured does not have a right to those benefits under the policy. This rule derives from the fact that the Insurance Code only allows an insured to recover actual damages 'caused by' the insurer's statutory violation." *USAA Tex. Lloyds v. Menchaca*, 545 S.W.3d 479, 490 (Tex. 2018) (citations omitted).  "[A]n insured who establishes a right to benefits under the policy can

recover those benefits as actual damages resulting from a statutory violation." *Id.* at 497.   An insured may also "recover benefits as actual damages under the Insurance Code even if the insured has no right to those benefits under the policy, if the insurer's conduct caused the insured to lose that contractual right." *Id.*   "An insurer's statutory violation does not permit the insured to recover *any* damages beyond policy benefits unless the violation causes an injury that is independent from the loss of the benefits." *Id.* at 500 (emphasis in original).

The insurers and Villarreal have pointed to summary judgment evidence that is disputed and supports conflicting inferences.   Under the insurance policies, "due proof that the Insured died in the term period" is a condition precedent to the payment of death benefits.   (Docket Entry No. 189-2 at 27; *see also* Docket Entry No. 189-1 at 13 (similar)).   The insurers point to indications of irregularities relating to Rosendi's sudden death on December 29, 2016.   The insurers retained an agency to investigate, an apparently routine practice when an insurer is reported to have died in a foreign country.   (Docket Entry No. 189 at 3).   Diligence International, a firm apparently familiar with claims from Mexico, reported concerns over the information from the doctor who certified Rosendi's death, the location of the embalming, the swift cremation after embalming, inconsistent accounts about Rosendi's Wake, Rosendi's claimed wealth, and the lack of information Villarreal provided about the insured.   (Docket Entry No. 189 at 4–11 (citing Docket Entry No. 189-11 at 5–7, 9, 20–22, 26, 28–29; Docket Entry No. 189-13 at 7–8)).   Since the Diligence reports, the insurers argue, they have learned of even more "red flags," including a report of an interview by a witness that she had seen Rosendi alive after his reported death.   (Docket Entry No. 189 at 4–11 (citing Docket Entry No. 189-3 at 4, 9, 10–11; Docket Entry No. 189-23 at 5, 13, 16–17, 18, 19–21, 22, 23–24, 150; Docket Entry 189-24 at 7, 16; Docket Entry No. 189-25 at 5–8)).

Villarreal argues that the recollections of witnesses as to the circumstances of Rosendi's death are fundamentally the same.  (Docket Entry No. 198 at 2–3, 7–8).  She points to summary judgment evidence of failures by Diligence International to conduct a competent, thorough investigation, including its failure to complete tasks it identified as outstanding, and its failures to interview a number of eyewitnesses to the events relating to Rosendi's death.  (Docket Entry No. 198-13 at 28; Docket Entry No. 198-14 at 13–14; Docket Entry No. 198-15 at 2; Docket Entry No. 198-16 at 3–4; Docket Entry No. 198-17 at 95–96; Docket Entry No. 198-18 at 83–86; Docket Entry No. 198-40 at 2; Docket Entry No. 198-41 at 4).  These uninvestigated witnesses include the funeral director's assistant, who retrieved the body; the individual who embalmed the body; and the individual who managed the cremation facility.  (Docket Entry No. 198 at 5; Docket Entry No. 198-18 at 83–86).  She also points to evidence casting doubt on the insurers' motivation in conducting the investigation and concerns about their exclusive reliance on Diligence.  (Docket Entry No. 198-13 at 22, 65; Docket Entry No. 198-14 at 11, 14, 18; Docket Entry No. 198-18 at 59–60; Docket Entry No. 198-19 at 2).

Villarreal also points to evidence that the supposed witness to an alive-and-well Rosendi was reported by an investigator, Oscar Gonzalez Abraham, who was hired by an investigation company other than Diligence International.  This entity, Pipkins Investigations Company, had been fired by Villarreal after initially working on her behalf.  Pipkins International in turn fired Abraham.  (Docket Entry No. 198-22 at 13).  There appears to be a fee dispute between Abraham and Pipkins.  (Docket Entry No. 198 at 6).  According to Villarreal, when Pipkins refused to pay Abraham for the work he had done for Villarreal, Abraham sought out the insurers with claimed evidence of fraud.  (Docket Entry No. 198-22 at 19; Docket Entry 198-23).  Villarreal also points to summary judgment evidence that the interview Abraham conducted of the witness who

35

supposedly saw Rosendi alive after his reported death does not include any statement that she had actually seen Rosendi.  (Docket Entry Nos. 198-24, 198-25).

In her amended complaint, Villarreal asserted claims for extracontractual damages based on misrepresentations, and bad faith and unfair settlement practices concerning the reasonableness of the insurers' investigation and policy benefits denial.  As to the misrepresentation claims (§§ 541.051, 541.060(a)(1), and 541.061), the insurers argue that as a matter of law, denials of policy benefits and disagreements on insurance coverage are not "misrepresentations" under Texas law.  In her response, Villarreal "abandon[s] her claims for misrepresentation" as addressed by the insurers.  (Docket Entry No. 198 at 2 n.2).  The court grants the insurers motion for partial summary judgment as to Villarreal's misrepresentation claims (§§ 541.051, 541.06(a)(1), and 541.061).

As to Villarreal's remaining extracontractual damages claims under § 541.060(a)(2)-(4), (7), concerning whether the insurers denied Villarreal benefits in bad faith and conducted an unreasonable investigation, the insurers are correct to point out that generally, insureds cannot recover policy benefits as extracontractual damages if an insured is not entitled to benefits under the insurance policy and there has been no statutory violation that caused damages.  *Menchaca*, 545 S.W.3d at 490.  But there are a host of factual disputes that are genuine and material to both the contractual and extracontractual claims.  Credibility determinations as to the investigation and investigators appear to be necessary to determine the insurers' reasonableness and good faith.  It is for a jury to decide both whether the insurers lacked "due proof" of death, which goes to whether Villarreal was entitled to benefits, and whether the insurers violated statutory obligations under Texas law when making that determination, such as failing to conduct a reasonable investigation.  The motion for partial summary judgment dismissing the section 541 counterclaims, (Docket Entry

No. 189), is granted as to the misrepresentation claims (§§ 541.051, 541.06(a)(1), and 541.061)), and denied as to the bad faith and unreasonable investigation claims (§ 541.060(a)(2)-(4), (7)).

## IV.    Conclusion

The insurers' evidentiary objections and motions to strike evidence, (Docket Entry Nos. 200, 207, 209, 17-2795; Docket Entry Nos. 196, 201, 203, 17-2796), are denied in part and granted in part.   Villarreal's motions for leave to file summary judgment evidence in support of her incontestability motion for partial summary judgment, her response to the insurers' motion for summary judgment on rescission, and her response to the insurers' motion for partial summary judgment as to her counterclaims, (Docket Entry Nos. 205, 211, 212, 17-2795; Docket Entry No. 199, 204, 205, 17-2796), are granted.   Villarreal's motion for partial summary judgment on the incontestability issue, (Docket Entry No. 192, 17-2795; Docket Entry No. 190, 17-2796), is denied. The insurers' motion for summary judgment as to rescission, (Docket Entry No. 194, 17-2795; Docket Entry No. 191, 17-2796), is denied.   The insurers' motion for partial summary judgment dismissing the section 541 counterclaims, (Docket Entry No. 189, 17-2795; Docket Entry No. 188, 17-2796), is granted in part and denied in part.   The trial will proceed.

SIGNED on September 13, 2021, at Houston, Texas.

Lee H. Rosenthal
Chief United States District Judge